# In the United States Court of Federal Claims

No. 09-38C

Filed: August 17, 2009

**TO BE PUBLISHED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| | * | |
| KENNEY ORTHOPEDIC, LLC, | * | Contract Disputes Act of 1978, |
| | * | 41 U.S.C. § 601 *et seq.*; |
| Plaintiff, | * | Federal Acquisition Regulation 52-212-4(m), |
| | * | 48 C.F.R. 52.212-4(m); |
| v. | * | Implied Covenant of Good Faith And |
| | * | Fair Dealing; |
| THE UNITED STATES, | * | Motion To Dismiss, |
| | * | RCFC 12(b)(1), 12(b)(6); |
| Defendant. | * | RESTATEMENT (SECOND) OF CONTRACTS |
| | * | §§ 347, 351, 352 (1981). |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**James M. Morris**, Morris & Morris, P.S.C., Lexington, Kentucky, for Plaintiff.

**Gregg Paris Yates**, United States Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER.

**BRADEN,** *Judge*.

## I.     RELEVANT FACTS.[1]

### A.     The August 15, 2006 Contract With Kenney Orthopedic, LLC.

Kenney Orthopedic, LLC ("Plaintiff") provides prosthetic and orthotic devices and services to the United States Government for use by veterans. *See* Compl. ¶ 2. On August 15, 2006, Plaintiff entered into Contract No. V249-P-0011 ("the Contract") to provide prosthetic and orthotic services for the United States Department of Veterans Affairs ("VA") at the Lexington, Kentucky Medical Center. *See* Pl. Ex. A (Contract No. V249-P-0011). The Contract had a base year from August 20, 2006 to August 19, 2007 with two renewable option years. *Id.*

---

[1] The facts cited herein were derived from *Kenney Orthopedic, LLC* v. *United States*, 83 Fed. Cl. 35 (2008) ("*Kenney Orthopedic I*"), Plaintiff's January 16, 2009 Complaint ("Compl.") and attached Exhibits 1-2 and A-X ("Pl. Ex. 1-2, A-X"), and Plaintiff's May 22, 2009 Response ("Pl. Resp.") and attached Exhibits A-B ("Pl. Resp. Ex. A-B").

The Contract required Plaintiff to deliver prostheses to the VA, no later than thirty calendar days after receipt of a delivery order, and to fabricate them in strict conformity with the prescriptions provided by the VA Amputee Clinic Team.  *Id.*  Under the Contract, Plaintiff could not change a prescription in any way, "without prior approval and written authority from the VA Amputee Clinic Team Prosthetic Representative or designee."  *Id.*  The Contract also stated that the VA would measure and fit first-time prosthetic users, and Plaintiff was responsible for measuring and fitting prostheses on experienced prosthetic wearers.  *Id*.

**B.      The Contracting Officer's December 19, 2006 Letter To Kenney Orthopedic, LLC And Subsequent Dispute.**

In a December 19, 2006 letter, the Contracting Officer ("CO") for the VA Tennessee Valley Healthcare System accused Plaintiff of not performing under the Contract, because Plaintiff altered prescriptions and provided non-prescribed items without prior approval.  *See* Pl. Ex. B.  The letter warned that unauthorized, non-prescribed items would not be reimbursed and asked Plaintiff to provide a plan by no later than December 29, 2006 to remedy the problem.  *Id*.

On December 21, 2006, the VA sent Plaintiff a proposed modification to the contract.  *See* Pl. Ex. C.  The modification provided that Plaintiff issue satisfaction surveys to all VA patients and submit a quarterly report back to the CO as of March 31, 2007.  *Id.*  On December 22, 2006, Plaintiff responded that it could not find any instances of non-compliance and requested additional information and documentation to address the VA's concerns.  *See* Pl. Ex. D.  Plaintiff, however, did not respond to the proposed contract modification.  *Id.*

On January 8, 2007, the CO replied that Plaintiff delivered a prosthesis to Patient "Williams 5967" on November 3, 2006, before the VA reviewed or approved the prosthesis price.  Pl. Ex. E.  The letter claimed that "[d]uring a conversation with Mr. Kenney[2] on Dec. 20th, he admitted he had casted/fit [Patient Williams 5967] prior to receiving [the prescription]. [Williams 5967] confirmed that fittings were done prior to Nov[.] 1, 2006."  *Id*.

On January 22, 2007, Plaintiff mailed the CO a "formal written response," explaining that it evaluated Patient Williams on September 8, 2006.  Pl. Ex. F.  Plaintiff also claimed it received a prescription from the VA on November 1, 2006 and provided Patient Williams with the device on November 3, 2006.  *Id.*  Plaintiff stipulated that "[t]he only 'admission' made . . . was that [it] provided diagnostic sockets ***only*** prior to the prescription date."  *Id*.  Plaintiff also conceded that it provided twelve socks instead of the prescribed six, which was "the usual and customary number . . . provided by Medicare," but did not request reimbursement from the VA for the extra socks.  *Id*.

_____

[2] Mr. John M. Kenny is the President of Plaintiff, Kenny Orthopaedic, LLC.  *See* Pl Ex. 1.

On February 27, 2007, the CO sent a letter to Plaintiff in response to Plaintiff's invoice for approximately $3,952.40 for a prosthesis delivered to "[Patient] Williams"[3] on November 3, 2006. *See* Pl. Ex. G. The CO claimed that "on December 20, 2006, Patient Williams received a new prescription from the VA for a replacement prosthesis," because the prosthesis provided on November 3, 2006 did not fit properly. *Id.* Accordingly, "the claim for approximately $3,952.40 to [Plaintiff] will be denied based on negligence in providing an appropriately fitting prosthesis[.]" *Id.*; *see also* Pl. Ex. A ("The contractor warrants the artificial limb provided against defective material and/or workmanship for a minimum of 90 calendar days from the date of acceptance."). The CO also advised Plaintiff that:

> I have been made aware of several instances where veteran's [sic] prescriptions have been altered without having prior approval and written authority from the VA Amputee Clinic Team Prosthetic Representative or designee. . . . **[T]his process will not be tolerated anymore. There will be no reimbursement for non-prescripted items not authorized and prescriptions written prior to VA approval of quote**. . . . **If you <u>continue</u> to perform outside the scope of the contract I will be forced to start termination procedures**.

Pl. Ex. G (bold in original).

### C. The February 28, 2007 Proposed Contract Modification.

On February 28, 2007, the VA sent Plaintiff a second proposed modification to the August 15, 2006 Contract's Prescription Policy for Prosthesis ("PPP"), that set forth the process for providing and purchasing prescription prostheses. *See* Pl. Ex. H.

### D. A Dispute Also Developed Between Kenney Orthopedic, LLC And The Veterans Administration's Network Contracting Manager.

On March 9, 2007, counsel for Plaintiff called the VA's Network Contracting Manager to inquire why the VA had not responded to Plaintiff's January 22, 2007 letter regarding Patient William's evaluation and also to express concern about the allegations of negligence in the CO's February 27, 2007 letter. *See* Compl. ¶ 11. In a March 13, 2007 letter, Plaintiff challenged the VA's "grossly inaccurate" characterization of Patient Williams' December 20, 2006 replacement as a "prosthesis," instead of a prescribed "replacement socket." Pl. Ex. I. In addition, Plaintiff explained how Patient Williams and "numerous other patients under the care of the VA experience anatomical changes necessitating sockets changes on a routine basis." *Id.* Finally, Plaintiff demanded immediate payment for the services provided to Patient Williams. *Id.*

---

[3] "[Patient] Williams" appears to be the same patient as "Williams 5967." *See, e.g.*, Pl. Ex. G (reporting that a "prosthesis for Mr. Williams . . . was delivered to him on November 3, 2006").

3

On March 14, 2007, Plaintiff sent another letter to the CO stating that Plaintiff received three additional requests for socket replacements or prostheses caused by anatomical changes. *See* Pl. Ex. J. This letter advised that, "given the difficulties associated with the other socket replacements," Plaintiff was "extremely concerned" that the VA would not reimburse Plaintiff for these items. *Id.* Plaintiff requested the VA provide "assurances" that it would not "continue to intentionally interfere with the necessary ongoing medical treatment of [Plaintiff's] patients, and that Plaintiff can expect appropriate payment for services rendered in accordance with the anatomical changes associated with these additional patients." *Id.*

On March 30, 2007, the VA responded that Plaintiff's ninety-day warranty covered Patient Williams' December 20, 2006 prescription for a replacement prosthesis and denied the $3,952.40 claim for Mr. Williams' prosthesis. *See* Pl. Ex. K. In addition, the VA records indicated that Mr. Williams received an original prosthesis on November 3, 2006, prior to Plaintiff receiving the November 30, 2006 purchase order from the VA and in contravention of the terms of the August 15, 2006 Contract. *Id.*; *see also* Pl. Ex. A ("The VA shall require the contractor to deliver items ordered under this contract no later than 30 calendar days *after* receipt of the delivery order.") (emphasis added). The VA also emphasized that the patients were under the care of the VA, not Plaintiff. *See* Pl. Ex. K. Moreover, "any refusal to treat patients referred under this contract shall be construed as a failure to perform under the terms and conditions of this contract." *Id.* The letter also proposed a "face to face" meeting to discuss the delivery order and payment process. *Id.*

On April 19, 2007, the VA's Prosthetic Manager requested that Plaintiff provide a consolidated report of the results of all patient satisfaction surveys, which the CO stated was required by the December 21, 2006 modification to the Contract. *See* Pl. Ex. L; *see also* Pl. Ex. C (Dec. 21, 2006 Contract Modification "A," unsigned by Plaintiff). On that same date, Plaintiff's Business Office Manager responded that "if the VA desires to change the terms of the [C]ontract, both parties must agree to the change." Pl. Ex. M; *see also* Pl. Ex. A (Contract Terms And Conditions) ("52.212-4(c) Changes. Changes in the terms and conditions of this contract may be made only by written agreement of the parties."). On April 23, 2007, Plaintiff sent a letter to the VA Prosthetic Manager reiterating Plaintiff's position that the December 21, 2006 modification was unilateral and not part of the August 15, 2006 Contract.[4] *See* Pl. Ex. N.

In a separate April 23, 2007 letter to the VA Network Contracting Manager, Plaintiff expressed disappointment about the VA's continued denial of Plaintiff's $3,952.40 claim. *See* Pl. Ex. O. Plaintiff reasserted that "[Patient Williams'] order was for a replacement ***socket***, not a replacement prosthesis." *Id.* Moreover, "contrary to [the VA's] assertions, the prescription for [the prosthesis] . . . was given to [Plaintiff] on November 1, 2006, and no prosthetic device was provided until November 3, 2006[.]" *Id.* In addition, Plaintiff accused the VA of intentionally interfering "with [Plaintiff's] ability to provide ongoing services to [Plaintiff's] patients" and making "bold

---

[4] The April 23, 2007 letter also proposed to negotiate a bilateral agreement for a quarterly satisfaction report, in exchange for "payments to [Plaintiff] for its expenditures related thereto[.]" Pl. Ex. 1-N.

assertions regarding [Plaintiff]'s treatment of patients" without "a single shred of evidence." *Id.* Plaintiff also made a "formal demand for any and all documents" supporting the VA's assertions. *Id.*

### E.     On July 2, 2007, The Veterans Administration Sent Kenney Orthopedic, LLC A Preliminary Notice To Extend The August 15, 2006 Contract Option.

Despite these issues, on July 2, 2007, the CO sent Plaintiff a preliminary notice of the VA's intent to extend the August 15, 2006 Contract. *See* Pl. Ex. P. Subsequently, the CO sent Plaintiff a signed Modification of Contract form exercising the first option year. *Id.*

### F.     The Contracting Officer's Demand For Cure And Kenney Orthopedic, LLC's Demand For An Independent Review.

On July 18, 2007, Plaintiff sent another letter to inform the VA that Plaintiff obtained "the patient's [presumably Patient Williams']" medical records and a sworn statement "unequivocally disproving your inappropriate and unsupported allegations of negligence and misconduct[.]" Pl. Ex. Q. Plaintiff demanded a retraction of allegations of negligence, an apology, and immediate payment of the compensation owed. *Id.*

In response, the CO sent [Plaintiff] a August 29, 2007 "Cure Notice"stating that:

> the Government considers [Plaintiff's] failure to comply with the ordering requirements required in [Plaintiff's] contract a condition that is endangering performance of the contract. Therefore, unless this condition is cured [by Plaintiff preparing a signed statement attesting Plaintiff's commitment to comply with the terms and conditions of the Contract] . . . within 10 days after receipt of this notice the Government may terminate for default under the terms and conditions of the [FAR] 52.212-4(m) Termination for Cause clause of this contract.

Pl. Ex. R.

The CO further complained that Plaintiff continued to "prescribe or alter VA prescriptions [in] violation of [the Contract]." *Id.* In addition, the CO warned Plaintiff that any failure to perform services pursuant to the Contract during the ten-day period would be regarded "as grounds for termination for cause[.]" *Id.*

On September 14, 2007, Plaintiff again demanded an acknowledgment of the VA's "repeated actions designed to defame and besmirch [Plaintiff]." Pl. Ex. S. The letter also requested the immediate removal of the CO and the appointment of an independent party to review Plaintiff's actions, with knowledge of prosthetic procedures. *Id.* Moreover, the letter stated the CO's assertion that Plaintiff failed to provide a prescribed product was "directly refuted by the actual Request for Quote that was received by [Plaintiff] as well as the prescription agreed upon by the VA Physician."

*Id.*  The September 14, 2007 letter again demanded a response to the "serious claims" in the CO's August 29, 2007 letter by an independent party "within ten . . . days of receipt."  *Id.*

On September 18, 2007, the CO responded that Plaintiff had failed to comply with the CO's August 29, 2007 "cure notice," requesting "a signed statement attesting [Plaintiff's] commitment to comply with the terms and condition of the contract."  Pl. Ex. T.  The CO further warned Plaintiff that:

> if [the VA does] not receive [Plaintiff's] response to [the VA's] previous letter dated August 29, 2007 before the close of business on **October 2, 2007**[,] the Government may conclude that [Plaintiff] choose[s] not to cure [Plaintiff's] deficiency and may exercise its right to terminate for default under the terms and conditions of the [FAR] 52.212-4 (m) Termination for Cause clause of [the Contract].

*Id.* (emphasis in original).

On September 24, 2007, Plaintiff replied that it responded to the August 29, 2007 letter, but reasserted that the VA was in violation of the August 15, 2006 Contract.  *See* Pl. Ex. U.  For the third time, Plaintiff requested that an independent party investigate the allegations in the VA's September 18, 2007 letter.  *Id.*

On October 4, 2007, Plaintiff accused the CO of "improper efforts to interfere with the proper course of treatment with VA patients" and of failing to address issues asserted by Plaintiff in previous correspondence.  *See* Pl. Ex. V.  Plaintiff advised the CO that all future correspondence would be sent to Frederick Downs, Jr., the VA's Chief Prosthetics and Clinical Logistics Officer, with the "hope and belief that the local VA's actions will be duly investigated and that appropriate action will be taken where necessary in order to assure that this type of activity does not continue to take place."  *Id.*

## G.  The Veterans Administration's October 23, 2007 Termination Of The August 15, 2006 Contract.

On October 23, 2007, the CO sent a letter to Plaintiff terminating the August 15, 2006 Contract "for cause in its entirety . . . in accordance with [FAR] 52.212-4(m)[.]"[5]  Pl. Ex. W

---

[5] FAR 52.212-4(m) provides, in relevant part, that:

The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance.  In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any

("Termination Letter").  The CO stated that Plaintiff had "not responded to the cure notice issued on August 29, 2007 and to the follow-up notice issued on September 18, 2007, which required a response to the [CO] on October 2, 2007." *Id.*  In addition, the CO cited Plaintiff's "continual failure to observe the requirements of [the Contract], specifically to obtain a purchase order authorizing [Plaintiff] to proceed with the required services." *Id.*  Plaintiff was instructed to "cease all services on behalf of VA patients and accept no further purchase orders." *Id.*  The CO also stated that the termination was "the final decision of the Contracting Officer," but Plaintiff could appeal to the Civilian Board of Contract Appeals ("CBCA")'s "small claim procedure for claims of $100,000 or less[,]" or "directly in the United States [C]ourt of Federal Claims . . . within 12 months of the date [Plaintiff] receive[d] [the] decision." *Id.*

On November 3, 2007, Plaintiff responded that, because the Termination Letter "states that the **sole** basis for termination is [Plaintiff]'s purported failure to respond to [the CO's] previous correspondence," its "inane" position "underscores the difficulties that have been routinely experienced by [Plaintiff] as well as patients." Pl. Ex. X.  Plaintiff claimed that on three separate occasions it responded to the CO's inquiries and requested responses to additional concerns. *Id.*  Plaintiff requested that the CO's "unilateral termination . . . be immediately rectified so as to allow the Veterans to obtain the proper care that has been continuously provided by [Plaintiff]." *Id.*

## II.    PROCEDURAL HISTORY.

### A.    Prior Complaint Before The United States Court Of Federal Claims.

On January 2, 2008, Plaintiff filed a Complaint in the United States Court of Federal Claims, alleging a claim for breach of contract and three tort claims.  *See Kenney Orthopedic I*, 83 Fed. Cl. at 41, 45-46.  On May 2, 2008, the Government filed a Partial Motion To Dismiss the three tort claims and Plaintiff's claim for punitive damages.

On August 7, 2008, the court granted the Government's Partial Motion To Dismiss the three tort claims on jurisdictional grounds. *Id.* at 45-46.  In addition, the court *sua sponte* dismissed the breach of contract claim, without prejudice, and granted leave for Plaintiff to file a new Complaint after submitting a certified claim for damages to the CO, as required by the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq. ("CDA"). *Id.* at 43.

---

and all rights and remedies provided by law.  If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

48 C.F.R. 52.212-4(m).

**B.     Agency Action After The August 7, 2008 Dismissal.**

On August 21, 2008, Plaintiff filed a certified claim to the CO requesting "an independent investigation and a prompt response . . . so that we may proceed with the appropriate remedies available under the Court's directives." Pl. Ex. 1.  On October 7, 2008, the CO issued a "Final Decision Notification" stating a final decision would be forthcoming on November 1, 2008.  *See* Pl. Resp. Ex. B.

On October 30, 2008, the CO issued a letter stating that since the August 21, 2008 certified claim presented the same facts and claims that were already resolved by the October 23, 2007 Termination Letter, "[t]hat decision disposes of all claims for relief you make here." Pl. Ex. 2.

**C.     The January 16, 2009 Complaint.**

On January 16, 2009, Plaintiff filed a new Complaint in the United States Court of Federal Claims.  Count I alleges that the VA breached the August 15, 2006 Contract by rejecting certain of Plaintiff's bills and impermissibly requiring Plaintiff to adhere to a modification of the August 15, 2006 Contract that was unilaterally imposed without Plaintiff's consent.  *See* Compl. ¶¶ 35-42. Count II alleges that the VA breached the implied covenant of good faith and fair dealing through false allegations, intentional interference with Plaintiff's ability to perform the August 15, 2006 Contract, and refusal to consider Plaintiff's performance, resulting in damage to Plaintiff's business efforts and financial harm.  *Id.* ¶¶ 43-54.  The January 16, 2009 Complaint seeks actual damages with interest, general and compensatory damages, fees and costs, and any further relief that the court believes is just and proper.  *Id.* (Prayer For Relief).

On March 16, 2009, the Government filed a Motion To Dismiss ("Gov't Mot. Dismiss") the January 16, 2009 Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.  On May 22, 2009, Plaintiff filed a Response along with Exhibits A-B.  On June 15, 2009, the Government filed a Reply in support of the March 16, 2009 Motion To Dismiss ("Gov't Reply").

**III.     DISCUSSION.**

**A.     Jurisdiction.**

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act.  28 U.S.C. § 1491.  This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id*. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *See United States* v. *Testan*, 424 U.S. 392, 398 (1976).  Therefore, a

plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215, 231 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

Under the Tucker Act, the United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the Contract Disputes Act of 1978, including a dispute concerning termination of a contract." 28 U.S.C. § 1491(a)(2); *see also* 41 U.S.C. § 609(a) ( "Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.").

**B.      Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]").

When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

**C.      Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).**

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In order to survive a motion to dismiss, however, the court "[does] not requir[e] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see*

9

*also* RCFC 12(b)(6) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

In *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court discussed, in detail, the "two working principles" of *Twombly's* heightened pleading requirements. First, although factual allegations alleged must be accepted as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Accordingly, the Court advised trial courts to begin their analysis "by identifying allegations [of law] in the complaint that are not entitled to the assumption of truth." *Id*. at 1951. If the legal allegations are "conclusory in nature," they are not entitled to the presumption of truth. *Id*. Second, to survive a Rule 12(b)(6) motion to dismiss, a complaint also must state a "plausible claim for relief." *Id*. at 1950 (citing *Twombly*, 550 U.S. at 556). Here, factual allegations are examined to determine "if they plausibly suggest an entitlement to relief." *Id*. at 1951.

In addition, under RCFC 12(d), the court may rely on undisputed documents attached as exhibits to the complaint without converting the motion to dismiss to a motion for summary judgment. *Akins* v. *United States*, 82 Fed. Cl. 619, 622 (Fed. Cl. 2008) ("Where [] the Court relies only on undisputed documents attached as exhibits to the Complaint, the Court may proceed without converting the motion to dismiss to one for summary judgment."); *see also* RCFC 12(d) ("If, on a motion under RCFC 12(b)(6) . . . matters *outside the pleadings* are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56.") (emphasis added).

**D.     The January 16, 2009 Complaint Is Not Barred By The Statute Of Limitations.**

**1.     The Government's Argument.**

The Government moves to dismiss Plaintiff's January 16, 2009 Complaint for lack of subject matter jurisdiction, arguing that Plaintiff's claims is time barred. *See* Gov't Mot. Dismiss at 6. Although a contractor may appeal a contracting officer's final decision by filing suit in the United States Court of Federal Claims, the action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." *Id*. at 6-7 (quoting 41 U.S.C. § 609(a)(1), (3)).

The Government argues that on October 23, 2007, the CO issued a "final decision" terminating the Contract. *Id*. at 7. On January 2, 2008, Plaintiff filed a Complaint in the United States Court of Federal Claims. *Id*. On August 7, 2008, the court dismissed the Complaint, because Plaintiff failed to "submit[] a certified claim to the CO for breach of contract damages." *Id*. at 7 n.2 (quoting *Kenney Orthopedic I*, 83 Fed. Cl. at 43). The Government maintains "that the CDA does not require a certified claim to the contracting officer where a government claim is at issue, *i.e.*, where the dispute arises from the Government's decision to terminate the contract for default." *Id*.

10

On August 18, 2008, Plaintiff submitted a certified claim, pursuant to the court's August 7, 2008 Decision. *Id*. at 7. The Government argues that Plaintiff's submission neither suspended the VA's October 23, 2007 "final decision," nor tolled the CDA's statute of limitations, as it "was neither 'an appeal [n]or suit authorized by the CDA.'" *Id*. at 8 (quoting 41 U.S.C. § 605(b)).

In addition, Plaintiff missed numerous opportunities to file a claim within the twelve-month statute of limitations. *Id*. at 8. First, Plaintiff failed to request a stay of the court's August 7, 2008 Order. *Id*. Second, Plaintiff failed to file a motion, pursuant to RCFC 59(e), requesting that the court reconsider the August 7, 2008 Order. *Id*. Finally, Plaintiff failed to seek a suspension and reconsideration of the CO's October 23, 2007 "final decision." *Id*. at 9. The Government contends that the twelve-month statute of limitations expired "on or about October 22, 2008." *Id*. Therefore, since the January 16, 2009 Complaint was filed three months after the CDA's statute of limitations expired, it must be dismissed. *Id*.

## 2.    Plaintiff's Response.

Plaintiff responds that the United States Court of Federal Claims has jurisdiction, because the CO did not render a "final decision" until October 30, 2008, and Plaintiff filed the Complaint within the CDA's twelve-month statute of limitations on January 16, 2009. *See* Pl. Resp. at 5-6. In *Kenney Orthopedic I*, the court dismissed Plaintiff's January 2, 2008 Complaint without prejudice, "with leave for the Plaintiff to refile after a final determination on a 'claim' had been made by the Veteran's Administration." *Id*. at 2. On August 18, 2008, Plaintiff filed a formal claim with the VA. *Id*. On October 7, 2008 in a letter with the subject line "Final Decision Notification," the Government wrote that it needed more time to "adequately review" Plaintiff's claim for $329,457.75 and "render a final decision." Pl. Resp. Ex. B. On October 30, 2008, in a letter with the subject line "Final Decision," the Government issued a "final decision" on Plaintiff's claim and instructed Plaintiff that it "may bring an action directly in the United States Court of Federal Claims within twelve months of the date you receive this decision." Pl. Ex. 2. Therefore, the Government has ignored both the court's *Kenney Orthopedic I* decision and its own October 7, 2008 and October 30, 2008 letters in claiming the VA made a "final decision" on October 23, 2007. *See* Pl. Resp. at 5. Plaintiff followed the directive of the Government's October 30, 2008 letter and filed a claim with the United States Court of Federal Claims on January 16, 2009, within the twelve months outlined in the October 30, 2008 letter. *Id*. Therefore, the Government's Motion To Dismiss is "grossly improper" and should be denied. *Id*. at 6.

In addition, Plaintiff argues that the January 16, 2009 Complaint is a "continuation" of *Kenney Orthopedic I* and the "law of the case" doctrine bars the Government's Motion. *Id*. at 7 (citing *Wolfchild* v. *United States*, 68 Fed. Cl. 779, 785 (2005) ("The law of the case doctrine is designed to protect the settled expectation of the parties.") (internal quotations omitted)). The parties' "settled expectations" arose from adherence to *Kenney Orthopedic I*. *Id*. The Government failed to object to the court's decision in *Kenney Orthopedic I* or seek clarification of that determination. *Id*.

Plaintiff also argues that collateral estoppel bars the Government's Motion To Dismiss. *Id*. at 7-9; *see also id*. at 9 ("[A] judgment on the merits in a first suit precludes relitigation in a second

11

suit of issues actually litigated and determined in the first suit.") (quoting *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994)).  Four prerequisites for collateral estoppel are:

> (1) an issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) the resolution of the issue was essential to a final judgment in the first action; and (4) the party defending against issue preclusion had a full and fair opportunity to litigate the issue in the first action.

*See* Pl. Resp. at 9.

In this case, the first two elements of collateral estoppel are met, because "the issues raised by [the Government] in its Motion to Dismiss were previously raised and litigated." *Id*. at 10.  As for the third element, since *Kenney Orthopedic I* "relied exclusively" on Plaintiff submitting a certified claim and the Government's reconsideration of that claim, the issue was "necessary to the resulting judgment." *Id*. at 10-11.  The fourth element is met because in *Kenney Orthopedic I*, the Government was fully represented, had monetary incentive, and "effective litigation . . . was not limited in any way." *Id*. at 11.

In the alternative, if the court determines that the CDA's statute of limitations began to run on October 27, 2007, the Government should be estopped from asserting the statute of limitations as a defense, because of an improper delay in issuing a determination on Plaintiff's August 18, 2008 claim. *Id*. at 13.  The equitable tolling doctrine allows for the statute of limitations to be tolled if the opposing party delays or misleads the party asserting the exception to file its claim after the statute of limitations expires.  *Id*. (citing *Irwin* v. *United States*, 492 U.S. 89, 96 (1990)).  After the Government asked for additional time "to adequately review the substance" of Plaintiff's August 18, 2008 claim in its October 7, 2008 letter, it then asserted in an October 30, 2008 letter that no such determination would be rendered. *Id*. at 14.  Therefore, it appears that the Government intentionally withheld making a determination until after the twelve-month statute of limitations arguably expired on October 23, 2007.  *Id*.

### 3.    The Government's Reply.

The Government replies that Plaintiff's failure to appeal the VA's October 23, 2007 final decision terminating the August 15, 2006 Contract to United States Court of Federal Claims within the CDA's twelve-month statute of limitations rendered the termination "conclusive and not subject to review by any forum." Gov't Reply at 4 (quoting *Hawkins* v. *United States*, 1 Cl. Ct. 221, 222 (1983)).  Although Plaintiff's August 21, 2008 certified claim to the VA sought monetary damages "for amounts relating to the termination," it did not suspend or reset the statute of limitations. *Id.* at 6-7.  The statute of limitations for appealing the October 23, 2007 final decision expired on October 22, 2008.  *Id.* at 6.  The January 16, 2009 Complaint merely seeks reconsideration of the VA's October 23, 2007 final decision terminating the August 15, 2006 Contract and is therefore time barred.  *Id.* (citing *K&S Constr.* v. *United States*, 35 Fed. Cl. 270 (1996)).

In fact, Plaintiff missed several opportunities to appeal the VA's final decision terminating the August 15, 2006 Contract after the court issued *Kenney Orthopedic I. Id.* at 8.  First, Plaintiff

could have either filed a Rule 59 motion for reconsideration or appealed the court's decision to the United States Court of Appeals for the Federal Circuit. *Id.* at 8-9. Second, Plaintiff could have sought a stay of the court's August 7, 2008 decision while Plaintiff filed a certified claim to the CO. *Id.* at 9. Finally, since the court dismissed *Kenney Orthopedic I* without prejudice, Plaintiff could have refiled a complaint challenging the final decision before the statute of limitations expired. *Id.* Neither the January 2, 2008 Complaint nor the court's *Kenney Orthopedic I* decision tolled the CDA statute of limitations on the October 23, 2007 final decision, because a court's dismissal without prejudice does not toll the statute of limitations. *Id.* at 10 (citing *Spannaus* v. *U.S. Dep't of Justice*, 824 F.2d 52, 61 (D.D.C 1987)).

In addition, Plaintiff's reliance on the administrative remedies exhaustion doctrine is misplaced, because that doctrine applies only to "disputes 'arising under' contracts with a 'mandatory dispute resolution provisions (sic),'" which is not present in this case    *Id.* (quoting *Brighton Village Assoc.* v. *United States*, 52 F.3d 1056, 1060 (Fed. Cir. 1995)). Therefore, since the statute of limitations was not tolled and the administrative remedies doctrine does not apply, Plaintiff's contention that the current matter is a continuation of *Kenney Orthopedic I* is erroneous. *Id.* For this reason, Plaintiff's reliance on the law of the case doctrine is also erroneous. *Id.* at 11.

The Government also argues that issue preclusion does not apply. *Id.* at 11-12. *Kenney Orthopedic I* held "that submission of a certified claim for any liquidated sum [Plaintiff] seeks in connection with its termination for default is a jurisdictional prerequisite for filing suit in this court." *Id.* The Government did not challenge that decision, but nevertheless Plaintiff missed the October 22, 2008 deadline to challenge the termination final decision or seek a  monetary claim based on a wrongful termination. *Id.* at 12.

The Government rebuts Plaintiff's invocation of the equitable tolling doctrine. *Id.* at 13. Since Plaintiff never challenged the VA's final decision terminating the August 15, 2006 Contract, the Government could not have caused Plaintiff to miss October 22, 2008 deadline. *Id.* Likewise, Plaintiff misinterpreted *Kenney Orthopedic I* in believing that the current case is a continuation that tolls the statute of limitations. *Id*. at 14. The Government is not responsible, because Plaintiff "assumed the risk of its belief" and missing the deadline. *Id.*

The Government also denies Plaintiff's assertion that the October 23, 2007 termination did not include the appeal rights language as mandated under Federal Acquisition Regulation 33.211(a)(4). *Id.* at 15.

### 4.    The Court's Resolution.

Under the Tucker Act, the United States Court of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under . . . the [CDA], including a dispute concerning termination of a contract." 28 U.S.C. § 1491(a)(2). An aggrieved contractor, however, must exhaust its administrative remedies by filing a claim with, and receiving a final decision from, the CO before it has standing to assert a claim in the United States Court of Federal Claims. *See Alliant Techsystems, Inc.* v. *United States*, 178 F.3d 1260, 1267 (Fed. Cir. 1999) ("the Tucker Act gives the [United States] Court of Federal Claims jurisdiction over CDA claims only when 'a decision of the contracting officer has been issued under section 6 of [the

CDA].'") (quoting 28 U.S.C. § 1491(a)(2)).  Once a CO issues a final decision, a plaintiff has twelve months to appeal the decision in the United States Court of Federal Claims.  *See* 41 U.S.C. § 609(a)(1), (3) ("[A] contractor may bring an action directly on the claim in the United States Court of Federal Claims . . . [and it] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim").

Under the CDA, a contractor's monetary claim of more than $100,000 against the government must be in writing, certified, and submitted to the CO for a final decision.  *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); 41 U.S.C. § 605(c) ("For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.").  Certification may not be waived, as it was "enacted to hold contractors liable for fraudulent, unwarranted and inflated claims and to encourage settlements." *United Sales, Inc.* v. *United States*, 34 Fed. Cl. 88, 95 (1995) (citing *Skelly & Loy* v. *United States*, 231 Ct. Cl. 370, 376 n.11 (1982)).

In this case, the October 23, 2007 termination by the CO constitutes a final decision on a *government claim* against a contractor for purposes of the CDA.  *See Malone* v. *United States*, 849 F.2d 1441, 1443 (Fed. Cir. 1988) ("Caselaw supports the proposition that a government decision to terminate a contractor for default is a government claim.").  On January 2, 2008, Plaintiff filed a Complaint within twelve months of the October 23, 2007 termination.  In *Kenney Orthopedic I*, the court held that Plaintiff's claim for breach of contract was not an appeal of the VA's termination but was a monetary claim *by the contractor* requiring certification by the CO.  *See Kenney Orthopedic I*, 83 Fed. Cl. at 43 n.6 ("The January 2, 2008 Complaint does not directly appeal or challenge the Contracting Officer's October 23, 2007 Termination of Contract For Cause, pursuant to 41 U.S.C. § 609(a), but instead asserts a breach of contract claim for monetary damages that exceeds $100,000.").  Because Plaintiff's breach of contract claim had not been certified and submitted to the CO for a final decision, the court dismissed it without prejudice and with leave to refile. *Id.* at 43 (citing 41 U.S.C. § 605(c)(1)).

On August 21, 2008, Plaintiff submitted a certified claim to the CO for breach of contract and breach of the implied duty of good faith and fair dealing.[6]  *See* Pl. Ex. 1.  On October 7, 2008, within the sixty-day period for the CO to act on a certified claim, the CO asked for more time.  *See* Pl. Resp. Ex. B; *see also* 41 U.S.C. § 605(c)(2) ("A contracting shall, within sixty days of receipt of a submitted certified claim over $100,000, -- (A) issue a decision; or (B) notify the contractor of the time within which a decision will be issued.").  Then, in a October 30, 2008 letter, the CO addressed the August 21, 2008 certified claim, writing that "the relief you request is based on the very same factual circumstances which formed the basis for my final decision dated October 23, 2007 . . . [and] [t]hat decision disposes of all claims for relief you make here."  Pl. Ex. 2.

---

[6] The court will address whether it has jurisdiction over Plaintiff's claimed breach of the implied covenant of good faith and fair dealing *infra*.

The Government argues that the October 30, 2008 letter did not constitute a final decision on Plaintiff's certified claim.  *See* Gov't Reply at 6-7.  Instead, because Plaintiff's claims already were addressed with the October 23, 2007 termination, the Government argues that the termination was a final decision on Plaintiff's claims.  *Id.*  Relying on *K&S Construction* v. *United States*, 35 Fed. Cl. 270 (1996), the Government argues that Plaintiff's breach of contract claim requires reconsideration of the CO's October 23, 2007 final decision, and is therefore time-barred by the CDA's twelve-month statute of limitations.  *Id.* at 6.

In *K&S Construction*, the plaintiff contractor received notice of termination on May 3, 1993.  *See K&S Constr.*, 35 Fed. Cl. at 277.  Ten months later, plaintiff submitted an undetailed "claim" to the contracting officer seeking additional compensation for costs incurred during performance.  *Id.* at 272.  The court construed plaintiff's request for compensation as an appeal of the termination, for which suit needed to be commenced within the CDA's twelve-month statute of limitations.  *Id.* at 277 ("[P]laintiff's right to challenge the contracting officer's default determination in this court did not require it initially to contest that determination before the contracting officer . . . [and] plaintiff's claims . . . constitute, in substance, an untimely request for reconsideration of that determination[.]").  Because the plaintiff did not file suit in the United States Court of Federal Claims until November 4, 1994, four months after the deadline, the court held that the twelve-month statute of limitations barred an appeal of the termination.  *Id.*

The Government's argument is unavailing for a number of reasons.  First, the Government ignores the court's holding in *Kenney Orthopedic I*.  *See Kenney Orthopedic I*, 83 Fed. Cl. at 43.  Had Plaintiff's January 2, 2008 Complaint in *Kenney Orthopedic I*, filed within twelve months of the October 27, 2007 termination, been an appeal, the court would have had jurisdiction and would not have dismissed the claim without prejudice.  *Id.*; *see also* 41 U.S.C. § 609(a)(1), (3).

Secondly, *K&S Construction* is distinguishable from the facts of this case.  The United States Court of Federal Claims "does not have jurisdiction over a new claim or a claim of different scope that was not previously presented and certified to the contracting officer for decision."  *Armour of Am.* v. *United States*, 69 Fed. Cl. 587, 590 (2006) (citing *Santa Fe Eng'rs* v. *United States*, 818 F.2d 856, 859 (Fed. Cir. 1987)).  "A new claim is 'one that does not arise from the same set of operative facts as the claim submitted to the contracting officer.'"  *Id.* (quoting *J. Cooper & Assoc., Inc.* v. *United States*, 47 Fed. Cl. 280, 285 (2000)).  The plaintiff's "claim" in *K&S Construction* arose from the same facts as the final decision of default termination, and that court construed it as an appeal of the termination.  *K&S Constr.*, 35 Fed. Cl. at 276; *see also Armour of Am.*, 69 Fed. Cl. at 590 (holding that a reconsideration of a default termination "requires consideration of the respective fault of the Plaintiff and Defendant in termination of the contract, the costs incurred by the Plaintiff on the work completed and the profits earned therefrom.")  In this case, however, Plaintiff's breach of contract claim arises from the following: the VA's rejecting of Plaintiff's bills for services rendered under the August 15, 2006 Contract; requiring Plaintiff's adherence to the Government's February 28, 2007 unilateral amendment to the Contract; intentionally interfering with Plaintiff's performance of the Contract; and baselessly terminating the Contract.  *See* Pl. Ex. 1.  Plaintiff's monetary claim for breach of contract is separate and distinct from the government claim terminating the August 15, 2006 Contract and thus required certification and submission to the contracting officer.  *See* 41 U.S.C. § 605(a) ("All claims by a *contractor* against the government relating to a contract shall be

15

in writing and shall be submitted to the contracting officer for a decision.") (emphasis added); *see also Armour of Am.*, 69 Fed. Cl. at 590-91 (holding that evaluation of plaintiff's breach claims posed "factual and legal issues" outside the scope of an appeal of a default termination). Therefore, Plaintiff could not bring suit in the United States Court of Federal Claims for monies and damages owed under the August 15, 2006 Contract until these claims were submitted to the CO for a final decision.

Assuming *arguendo* that the October 30, 2008 letter did not constitute a final decision on Plaintiff's claim for breach, inaction by a CO on a certified claim is a deemed denial of the claim and constitutes a final decision. *See* 41 U.S.C. § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of [a] . . . suit on the claim"). Therefore, the CO's final decision did not occur as a matter of law until October 30, 2008.

For these reasons, the January 16, 2009 Complaint is not barred by the twelve- month statute of limitations. *See* 41 U.S.C. § 609(a)(1), (3).

**E.    The Court Has Jurisdiction Over Count II Of The January 16, 2009 Complaint For Breach Of Implied Duty Of Good Faith And Fair Dealing.**

**1.    The Government's Argument.**

The Government also moves to dismiss Count II of the January 16, 2009 Complaint, pursuant to RCFC 12(b)(1), because it alleges a tort and is outside the scope of the court's jurisdiction. *See* Gov't Mot. Dismiss at 9. The limited jurisdictional grant of the Tucker Act "expressly excludes cases sounding in tort." *Id.* (citing 28 U.S.C. § 1491(a)(1)). The January 2, 2008 Complaint alleged claims of: tortious interference with a prospective advantage; tortious interference with a contractual advantage; and intentional infliction of emotional distress, which the court dismissed on jurisdictional grounds. *See Kenney Orthopedic I*, 83 Fed. Cl. at 46. The Government argues that Count II of the January 16, 2009 Complaint simply re-frames the dismissed tort claims as a breach of an implied covenant of good faith and fair dealing. *See* Gov't Mot. Dismiss at 10. In *Kenney Orthopedic I*, the court stated that "[i]f Plaintiff elects to file a new complaint after complying with 41 U.S.C. § 605(a), if applicable, Counts II and III may be restated as a breach of the implied duty of good faith and fair dealing." 83 Fed. Cl. at 46 n.7. The Government, however, argues that "an implied covenant of good faith and fair dealing claim is not applicable here." *Id.* at 11 n.4.

**2.    Plaintiff's Response.**

Plaintiff responds that the United States Court of Federal Claims has jurisdiction over Count II of the January 16, 2009 Complaint, because it is a tort claim that arises from a breach of contract. *See* Pl. Resp. at 15. "[W]here a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the [United States] Court of Federal Claims." *Id.* (quoting *Hall* v. *United States*, 69 Fed. Cl. 51, 57 (2005)). In *Kenney Orthopedic I*, the court stated that "Counts II and III may be restated as a breach of implied duty of good faith and fair dealing." *Id.* (citing *Kenny Orthopedic I*, 83 Fed. Cl. at 46

16

n.7). Therefore, since Plaintiff's claim for breach of implied covenant of good faith and fair dealing directly stems from the parties' contractual agreement, it is within the court's jurisdiction. *Id*. at 16.

### 3.     The Court's Resolution.

The United States Court of Appeals for the Federal Circuit has held that between each contracting party there is an implied covenant of good faith and fair dealing.     *See Centex Corp*. v. *United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.")). When the Government is a contracting party, the covenant applies just as it would with a private party. *Rumsfeld* v. *Freedom NY, Inc.*, 329 F.3d 1320, 1330 (Fed. Cir. 2003) ("Government coercion may be supported by a finding that the government . . . violat[ed] the covenant of good faith and fair dealing implicit in every contract.").

A claim that the Government breached the implied covenant of good faith does not require a showing of bad faith. *See Rivera Agredano* v. *United States*, 70 Fed. Cl. 564, 574 n.8 (2006) ("An allegation of breach of the covenant of good faith and fair dealing is an allegation that the party's contracting partner deprived it of the fruits of the contract . . . while bad faith is motivated by malice."); *see also Tecom, Inc.* v. *United States*, 66 Fed. Cl. 736, 770 (2005) ("[I]t is clear, particularly when the specific aspects of the duties to cooperate and not to hinder are at issue, that proof of fraud, or quasi-criminal wrongdoing, or even bad intent are not required."). Therefore, the United States Court of Appeals for the Federal Circuit has held that obligations of the covenant of good faith and fair dealing include duties "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex*, 395 F.3d at 1304; *see also Malone* v. *United States*, 849 F.2d 1441, 1445 (Fed. Cir. 1988) (holding that a "lack of diligence and interference with or failure to cooperate in the other party's performance" violates the obligation of good faith). "Breach of these obligations is a contractual breach . . . [and] can rise to the level of material breach that would excuse a party's duty to perform." *San Carlos Irrigation & Drainage Dist.* v. *United States*, 84 Fed. Cl. 786, 803 (2008).

Count II of the January 16, 2009 Complaint alleges that the VA breached the implied covenant of good faith and fair dealing "by intentionally interfering with [Plaintiff's] ability to perform the Contract; by failing and refusing to reconsider [Plaintiff's] ability to perform under the terms and conditions of the Contract; [and] by intentionally interfering with the contractual relationships that were made possible as a result of that Contract." Compl. ¶ 45. The Government argues that such claims "sound in tort" and are therefore outside the jurisdiction conferred by the Tucker Act. *See* Gov't Mot. Dismiss at 9. Although the United States Court of Federal Claims does not have jurisdiction over tort claims, "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction of the [United States] Court of Federal Claims." *Awad* v. *United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002); *see also Hall*, 69 Fed. Cl. at 57 (holding that it is "well established" that where a tort claim arises from a breach of contract, the cause of action is properly within the United States Court of Federal Claims' jurisdiction).

Accordingly, the court has jurisdiction over Plaintiff's claim of the VA's alleged breach of the implied covenant of good faith and fair dealing, since the conduct at issued arose from the August 15, 2006 Contract, to which the VA was a party.

**F.      Count II Of The January 16, 2009 Complaint Adequately States A Claim Upon Which Relief Can Be Granted.**

**1.      The Government's Argument.**

The Government moves to dismiss Count II of Plaintiff's January 16, 2009 Complaint for failure to state a claim upon which relief can be granted, because it seeks damages not compensable as a matter of law. *See* Gov't Mot. Dismiss at 11; *see also* RCFC 12(b)(6). Damages must directly result from the breach, and those too remote or speculative may not be awarded. *See* Gov't Mot. Dismiss at 11-12 (citing *Myerle* v. *United States*, 33 Ct. Cl. 1, 27 (1897); *First Fed. Lincoln Bank* v. *United States*, 518 F.3d 1308, 1319 (2008)). In Count II, Plaintiff seeks damages for "lost business, damage to reputation, good will, and value of the ongoing business." Compl. ¶ 50. Because these damages are too remote or consequential to be awarded, the court should dismiss Count II for failure to state a claim upon which relief can be granted. *See* Gov't Mot. Dismiss at 12.

**2.      The Court's Resolution.**

In order to survive a motion to dismiss for failure to state a claim, a plaintiff must make legal allegations that are more than "mere conclusory statements" and also state a "plausible claim for relief." *See Iqbal*, 129 S. Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 556). In determining whether expectation damages are available, the United States Court of Appeals for the Federal Circuit has held that they "are recoverable provided they are actually foreseen or reasonably foreseeable, are caused by the breach of the promisor, and are proved with reasonable certainty." *Bluebonnet Sav. Bank, FSB* v. *United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 347, 351, 352 (1981)).

The August 15, 2006 Contract required Plaintiff "to furnish artificial limbs and related services to those veterans that require them and are eligible for assistance." Pl. Ex. A. The August 15, 2006 Contract also addressed the importance of vendor reputation and good will to eligible veterans. *Id.* ("To assist in the selection of their Prosthetist, all eligible veteran beneficiaries shall be given a current list of contract providers located within the VISN Medical Center jurisdiction. . . . It will continue to be VA's policy to permit all . . . amputees who have continuing eligibility and who have established ties with an existing Prosthetist to continue to use that Prosthetist[.]"). The VA repeatedly refused payment on an invoice for services rendered for "Patient Williams," even after Plaintiff filed a detailed explanation of the procedures ad care rendered. Despite this explanation and with no other apparent justification, the VA later claimed that Plaintiff "ha[d] placed our veterans (sic) care at high risk." *See* Pl. Ex. F, G, K, R..

By setting out the preceding facts, the January 16, 2009 Complaint satisfies both of the requirements laid out by the United States Supreme Court in *Iqbal*. First, the Complaint makes more than "mere conclusory statements" of law. *See* Compl. ¶¶ 49-50. The Complaint alleges Plaintiff's reluctance to treat patients for fear of non-payment by the VA and Plaintiff's frustration at having

its reputation tarnished by the VA.  In addition, these allegations satisfy the second requirement of *Iqbal* by stating a "plausible claim for relief", because the Complaint provides adequate factual allegations that "the VA's interference" caused "Plaintiff's inability to secure contracts and conduct regular business with VA patients[,] . . . additional patients and potential patients" and "substantial damages, lost business, damage to reputation, good will, and value of going business."  Compl. ¶¶ 49-50.

Accordingly, the January 16, 2009 Complaint states a claim upon which relief can be granted. *See Iqbal*, 129 S. Ct. at 1949-50.

## IV.   CONCLUSION.

For the reasons stated herein, the Government's March 16, 2009 Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), is denied.

The court will hold a telephone status conference with the parties at 2:00 p.m. Eastern Time on Tuesday, August 25, 2009.

**IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**